UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF KENTUCKY
COVINGTON DIVISION

IN RE

CINDY B. SCHERMAN                                              CASE NO. 21-20542
                                                                      CHAPTER 7
DEBTOR

MEMORANDUM OPINION AND ORDER
GRANTING MOTION FOR CONTEMPT

This matter is before the Court on Debtor Cindy B. Scherman's Motion for Contempt and related exhibits [ECF No. 35, 36] due to an alleged violation of Debtor's discharge pursuant to § 524[1], the Response by Creditor Kentucky Education and Labor Cabinet, Office of Unemployment Insurance [ECF No. 42], and Debtor's Reply [ECF No. 43].  The Court held a hearing on April 4, 2023, the parties submitted supplemental authority [ECF Nos. 52, 53], and the matter is submitted on the record.

Creditor states "the Court must first determine whether the [Creditor] . . . violated the discharge injunction when it sought to collect Debtor's benefit's overpayment . . . [which] will depend on whether the overpayment is a pre-petition or post-petition debt." [ECF No. 53 at 3.] Creditor continues, "if the Court determines that the overpayment is a pre-petition debt, the Court must then decide whether there exists a 'fair ground of doubt' about the lawfulness of the [Creditor's] conduct or if there exists no objectively reasonable basis for its conduct." [*Id.*]  The Court agrees with this framing and holds: (1) Creditor violated the discharge injunction because the debt it sought to collect is a prepetition debt; and (2) there is no fair ground of doubt that Creditor's actions violated the discharge injunction.

---

[1] Unless otherwise indicated, references to all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532.

**JURISDICTION AND VENUE**

This Court has jurisdiction over this proceeding.  28 U.S.C. § 1334(a).  Venue is proper in this District.  28 U.S.C. § 1409.  This is a core proceeding.  28 U.S.C. § 157(b)(2)(A) and (O).

**BACKGROUND**

This case involves two separate notices of determination Creditor issued stating Debtor is liable for two separate instances of unemployment benefits overpayment.  Creditor mailed Debtor the First Notice of Determination (the "First Notice") on April 26, 2021, after Creditor's audit of Debtor's account in early 2021.  [ECF Nos. 36, 53.]  This audit revealed Creditor overpaid Debtor $513 in unemployment benefits after Debtor underreported income earned at The Shepherds House Inc. during the week ending February 20, 2021.  The First Notice became final on May 26, 2021.

Debtor filed her chapter 7 bankruptcy petition on July 6, 2021.  [ECF No. 1.]  On August 20, 2021, Debtor amended her schedules to list Creditor as having an unsecured claim and to add Creditor to the mailing matrix.  [ECF No. 19.]  Debtor received a discharge on October 12, 2021.  [ECF No. 20.]  Creditor admits it "had knowledge of the discharge order[.]"  [ECF No. 42 at 3.]  There is no dispute that the debt related to the First Notice was discharged.

After Debtor received her chapter 7 discharge, Creditor allegedly violated the discharge injunction by issuing a Second Notice of Determination (the "Second Notice") on May 6, 2022, seeking to collect $7,368 (the "Debt") from Debtor based on an overpayment of unemployment benefits again due to an alleged underreporting of wages.  Creditor contends Debtor misrepresented her earnings from Frisch's Restaurants, Inc. for prepetition weeks ending July 25 through December 26, 2020.  The Second Notice became final on June 7, 2022, when Debtor did

2

not appeal it. Debtor's counsel sent Creditor a letter on August 15, 2022, stating attempts to collect the Debt violate the discharge injunction. Creditor responded by filing a recoupment lien to recover the Debt on August 23, 2022, and by expressing its disagreement in a return letter dated September 1, 2022. Creditor contends it only had a right to payment for the Debt related to the Second Notice after the right to collect the Debt became final; therefore, according to Creditor, the Debt arose post-petition and was not discharged.

On September 16, 2022, Debtor moved to reopen her case, and the Court granted that relief over Creditor's objection on December 13, 2022. Debtor then filed the Motion for Contempt. Debtor contends the Debt arose prepetition, Creditor's collection attempts violated the discharge injunction under § 524, and Creditor had no fair ground of doubt that its actions violated the discharge injunction.

## DISCUSSION

Section 727(b) "discharges the debtor from all debts that arose before the [petition date]." 11 U.S.C. § 727(b). Section 524 "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor[.]" 11 U.S.C. § 524(a)(2). This prohibits creditors from attempting to collect discharged prepetition debt. *Tenn. Student Assistance Corp. v. Hood*, 541 U.S. 440, 447 (2004) ("The discharge order releases a debtor from personal liability with respect to any discharged debt . . . by operating as an injunction to prohibit creditors from attempting to collect or to recover the debt.").

The inquiry for holding a creditor in civil contempt for a violation of the discharge injunction is a two-step process. *In re Bentley*, 607 B.R. 889, 894 (Bankr. E.D. Ky. 2019). A

court first must determine whether the creditor's actions violated the discharge injunction. *In re Ragone*, No. 20-8013, 2021 WL 1923658, at *5 (B.A.P. 6th Cir. May 13, 2021) (citation omitted). If the actions violated the discharge injunction, the court then must assess whether there was no fair ground of doubt that § 524 barred Creditor's collection efforts. *Taggart v. Lorenzen*, 139 S. Ct. 1795, 1801 (2019). In other words, an act is not sanctionable if a creditor had an objectively reasonable basis for concluding its conduct did not violate the discharge injunction. *Id.*

A debt may be dischargeable even if the right to payment does not accrue under state law until after the petition date. A debt is a "liability on a claim." 11 U.S.C. § 101(12). A claim is broadly construed to mean a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." *Id.* at § 101(5)(A). "Contingent claims are those in which a debt may be triggered only upon the occurrence of a future event[.]" *Republic Bank & Tr. Co. v. Hutchinson*, 444 B.R. 728, 731 (W.D. Ky. 2011). Courts in this circuit universally agree that "a right to payment that is not yet enforceable under non-bankruptcy law at the time of the bankruptcy filing may still constitute a claim that is dischargeable in the bankruptcy case." *Id.* at 733 (quoting *In re Huffy Corp.*, 424 B.R. 295, 301 (Bankr. S.D. Ohio 2010)); *see also Hunter v. Lake Cumberland Reg'l Hosp.*, LLC, Civil No. 11-316-GFVT, 2012 WL 4601717, at *3 (E.D. Ky. Sept. 28, 2012) (citation omitted) (same). Therefore, a prepetition contingent claim is a debt that may be discharged.

**I.     Creditor violated the discharge injunction by seeking to collect a prepetition debt.**

The Court must decide whether the Debt arose pre or post-petition. Federal law determines when a claim arises, not state law. *In re Parks*, 281 B.R. 899, 902 (Bankr. E.D. Mich. 2002) (citing *Siegel v. Federal Home Loan Mortgage Corp.*, 143 F.3d 525, 532 (9th Cir. 1998)). Courts assess whether a debt arose prepetition or post-petition using one of three tests.

First, under the minority "right to payment" approach, a claim arises when all elements are established entitling the claimant to payment under non-bankruptcy law. *Id.*; *see also In re Cleveland*, 349 B.R. 522, 529 (Bankr. E.D. Tenn. 2006). Creditor advocates for this approach. "This test has been widely rejected." *In re City of Detroit*, 548 B.R. 748, 762 (Bankr. E.D. Mich. 2016). The right to payment approach is "inconsistent with the broad definition of 'claim' intended by Congress." *Parks*, 281 B.R. at 902. "A claim does not arise post-petition simply because the time for payment is triggered by an event that happens after the filing of the petition." *Cleveland*, 349 B.R. at 532. Consequently, "a right to payment that is not yet enforceable at the time of filing of the petition under non-bankruptcy law, may be defined as a claim" under § 101(5)(A) and may be discharged as a prepetition debt. *Id.* This Court joins other courts in rejecting the "right to payment" approach.

Second, the "conduct approach" "focuses on when the underlying acts or conduct forming the basis of the right to payment occurred." *Id.* at 529. If this approach applies, Creditor concedes it "favors a finding that the debt was [a] pre-petition" debt. [ECF No. 53 at 5.] Debtor agrees. [ECF No. 44 at 3]. Because the conduct giving rise to the claim occurred prepetition when Debtor underreported her earnings in 2020, the Debt arose prepetition under the "conduct approach."

5

The third approach is the "fair contemplation" or "relationship" approach. *Huffy Corp.*, 424 B.R. at 305. Under this approach, a claim may arise prepetition if (a) "the debtor's conduct giving rise to the claim occurred prepetition;" (b) "some form of prepetition (or preconfirmation) relationship existed between the debtor and the creditor such as 'contact, exposure, impact or privity[;]'" and (c) the claim "can be 'fairly contemplated by the parties' at the time of the debtor's bankruptcy filing." *Id.* at 304–05.

The first two factors of this approach are not in dispute. Creditor admits Debtor's conduct giving rise to the claim occurred before she filed her petition. [ECF No. 53 at 5.] And, Creditor admits "the parties had a 'relationship' pre-petition[.]" [*Id.* at 5.] Indeed, the parties had a prepetition relationship insofar as: (1) Creditor considered Debtor's claim for unemployment benefits for a period occurring in mid-2020 through early 2021, months before Debtor filed her petition; (2) Creditor approved and paid unemployment benefits to Debtor for this period; and (3) Creditor sent Debtor the First Notice prepetition claiming the overpayment of unemployment benefits based on Debtor underreporting her earnings for the week ending February 20, 2021.

The third and only disputed component of the "fair contemplation" or "relationship" approach also is met. The overpaid unemployment benefit in the Second Notice was within Creditor's fair contemplation at the time Debtor filed her bankruptcy petition. According to the First Notice, Creditor audited Debtor's unemployment benefits in early 2021 and determined Debtor had been overpaid $513 based on Debtor underreporting her earnings from The Shepherd's House in February 2021. [ECF No. 36–5.] Creditor states it did not discover the earlier-in-time overpaid unemployment benefits for the period of July to December 2020 covered

in the Second Notice when performing the early 2021 audit; rather, Creditor explains, it discovered the overpayment in May 2022—almost two years after the first instance of overpayment in July 2020. [*Id.*]

Before Debtor filed her bankruptcy petition, similar to the situation in *Parks*, Creditor "was in a position to ascertain whether the representations made by [Debtor concerning her earnings at Frisch's] were accurate" either upon Debtor initially requesting unemployment benefits or during the Creditor's early 2021 audit of payments to Debtor. *Parks*, 281 B.R. at 903 (finding this factor weighs in favor of holding that a debt is a prepetition debt under the fair contemplation approach). Given Creditor's prepetition knowledge of Debtor's history of underreporting earnings, Creditor "could have confirmed the representations by contacting" Frisch's. *Id.* The "fair contemplation" or "relationship" approach is satisfied because Creditor "could have ascertained through the exercise of reasonable due diligence that it had a claim" as of the petition date. *City of Detroit,* 548 B.R. at 763.

Accordingly, the Debt arose prepetition under either the "conduct approach" or the "fair contemplation" or "relationship" test. While the Court rejects the right to payment approach, there is no need to adopt either of the other two approaches. Creditor only contends it did not violate the discharge injunction because the Debt arose post-petition. Because the Court holds the Debt arose prepetition, the Court finds Creditor violated the discharge injunction.

Creditor also argues the debt is nondischargeable under § 523(a)(2)(A) and attempting to collect a nondischargeable debt does not violate the discharge injunction. [ECF No. 42 at 3.] This argument misses the mark. Creditor had notice of Debtor's bankruptcy case and did not

commence an adversary proceeding to bring a cause of action under § 523(a) as required by § 523(c).

## II. There is no fair ground of doubt that Creditor's actions violated the discharge injunction.

A court may hold a creditor in civil contempt for violating the discharge injunction if there is no fair ground of doubt as to whether the order granting discharge barred the creditor's conduct. *Taggart*, 139 S. Ct. at 1799. Even if a creditor subjectively believes it was not acting in violation of the discharge order, courts may hold a creditor in civil contempt when there is no objectively reasonable basis for the creditor to conclude their collection efforts were lawful. *Id.*

Courts have held a fair ground of doubt exists when there is a clear split of authority. *See, e.g.*, *In re Orlandi*, 612 B.R. 372, 382–83 (B.A.P. 6th Cir. 2020). Here, there is no clear split of authority giving Creditor an objectively reasonable basis for concluding its collection efforts did not violate the discharge injunction. While three tests exist to determine whether a debt arose prepetition or post-petition, none give rise to an objectively reasonable basis for Creditor to conclude its actions were lawful. As explained above, given the facts presented, Creditor lacked an objectively reasonable basis to believe the Debt arose post-petition based on the two approaches adopted by courts in the Sixth Circuit. Further, Creditor cited no caselaw from within this circuit adopting the "right to payment" approach. In fact, Creditor's nonprecedential opinions from outside the Sixth Circuit do not provide an objectively reasonable basis to conclude its actions were lawful. *See In re Poole*, 639 B.R. 730, 736–37 (Bankr. N.D. Ohio 2022) (finding that "[s]ince unpublished decisions are not binding precedent, they cannot provide an 'objectively reasonable basis' for concluding that Defendant-Creditor's conduct was unlawful."). The case Creditor cites adopting the "right to payment" approach was overruled

over a decade ago. *In re Frenville Co., Inc.*, 744 F.2d 332, 337 (3d Cir. 1984), *overruled by In re Grossman's Inc.*, 607 F.3d 114 (3d Cir. 2010) (en banc). Additionally, courts in this Circuit have uniformly criticized and rejected this test. *See, e.g., Huffy Corp.*, 424 B.R. at 303 ("this court, like many others, rejects the right to payment approach.") (collecting cases). Thus, there is no fair ground of doubt that Creditor's actions violated the discharge injunction. Creditor's position that its actions were lawful is not objectively reasonable.

## CONCLUSION

The Court having reviewed the record and considered the parties' arguments, and for the foregoing reasons, IT IS ORDERED that:

(1) Debtor's Motion [ECF No. 35] is GRANTED.

(2) Creditor shall cease any and all attempts to collect the Debt related to the Second Notice.

(3) Debtor shall file an affidavit, declaration, or other evidentiary support for an award of actual damages (including costs and attorneys' fees) and punitive damages on or before **June 6, 2023.**

(4) The Court will conduct a hearing concerning the assessment of damages for Creditor's violation of the discharge injunction **at 10:00 a.m. on June 13, 2023, in the U. S. Bankruptcy Court, United States Courthouse, 35 West 5th Street, Suite 306, Covington, Kentucky.**

9

___

**The affixing of this Court's electronic seal below is proof this document has been signed by the Judge and electronically entered by the Clerk in the official record of this case.**



**Signed By:**
*Tracey N. Wise*
**Bankruptcy Judge**
**Dated: Wednesday, May 24, 2023**
(tnw)